**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Daniel HERNANDEZ–GALAVIZ,**
**Defendant—Appellant.**

**No. 06–50239.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 14, 2007 *.

Filed March 8, 2007.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

A. Dale Blankenship, Federal Office Building, San Diego, CA, for Plaintiff–Appellee.

James Fife, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. Discretionary § 212(c) relief from deportation is available to a certain class of permanent resident aliens who were previously con-

Before: PREGERSON, W. FLETCHER, and BERZON, Circuit Judges.

## MEMORANDUM **

Daniel Hernandez–Galaviz appeals the district court's denial of his motion to dismiss an indictment charging him with a violation of 8 U.S.C. § 1326. Hernandez–Galaviz asserted that indictment was based on an invalid underlying deportation order. After the district court denied his motion, Hernandez–Galaviz pled guilty to two counts of illegal entry in violation of 8 U.S.C. § 1325, but reserved his right to appeal.

The sole issue presented is whether Hernandez–Galaviz was prejudiced by the immigration judge's ("IJ's") failure to advise him that he was eligible to apply for § 212(c) relief.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

An alien charged with a § 1326 violation may collaterally attack a final "deportation order that constituted an element of a criminal offense." *United States v. Herrera–Blanco*, 232 F.3d 715, 718 (9th Cir. 2000); *see also United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000) ("[T]he validity of the deportation may be collaterally attacked in the criminal proceeding."). To prevail on a collateral attack, an alien must show that the underlying deportation proceeding violated his right to due process and that he was prejudiced by the violation. *See id.*

On appeal, Hernandez–Galaviz contends that the indictment should have

victed of an aggravated felony, and who served less than five years imprisonment. *See* 8 U.S.C. § 1182(c) (1994); *United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1053 (9th Cir.2003).

been dismissed because it was based on an invalid prior deportation. Thus, according to Hernandez–Galaviz, the district court erred in: (1) applying the wrong prejudice standard, and (2) concluding that Hernandez–Galaviz was not prejudiced by the IJ's failure to inform him of the availability of discretionary relief from deportation.

An alien can generally show prejudice by demonstrating a "plausible ground for relief from deportation." *See United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1050 (9th Cir.2004). However, an alien with a serious criminal history must demonstrate "unusual or outstanding equities" in order to show that he was prejudiced by the deficiency in the underlying deportation proceeding. *United States v. Gonzalez–Valerio*, 342 F.3d 1051, 1056–57 (9th Cir.2003).

Before his 1999 deportation, Hernandez–Galaviz suffered two felony convictions, four misdemeanor convictions, and was cited six times for various misdemeanor and traffic offenses.[2] Accordingly, the district court did not err when it required Hernandez–Galaviz to demonstrate unusual or outstanding equities in order to demonstrate prejudice. *See Alaelua v. INS*, 45 F.3d 1379, 1380–81 (9th Cir.1995) (single conviction for five felony counts of selling heroin); *Ayala–Chavez v. INS*, 944 F.2d 638, 640–42 (9th Cir.1991) (possession of cocaine and multiple traffic violations).

To demonstrate prejudice under the heightened standard, Hernandez–Galaviz bears the burden of showing that, at the time of his deportation hearing, the Attorney General would have exercised his discretion in favor of granting Hernandez–Galaviz § 212(c) relief. *Gonzalez–Valerio*, 342 F.3d at 1056.

Determining eligibility for § 212(c) relief requires consideration of "all the facts and circumstances of a particular case, taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident." *Yepes–Prado v. INS*, 10 F.3d 1363, 1365–66 (9th Cir.1993) (citing *Matter of Edwards*, 20 I. & N. Dec. 191, 194 (BIA 1990)).

"As the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence ...." *See Matter of Roberts*, 20 I. & N. Dec. 294, 299 (BIA 1991). "Moreover, one or more of the[ ] adverse considerations may ultimately be determinative of whether section 212(c) relief is in fact granted in an individual case." *Id.*

Here, Hernandez–Galaviz's lengthy residence and significant family ties in the United States were insufficient to overcome his lengthy and serious criminal history, propensity for recidivism, lack of rehabilitation, absence of a steady and valued employment history, and lack of evidence of any military service, business or property ties, or community service. *See Yepes–Prado*, 10 F.3d at 1366.

Hernandez–Galaviz's reliance on *Ubaldo–Figueroa* to show that the district court improperly weighed his equities is misplaced. 364 F.3d at 1050. Hernandez–Galaviz failed to demonstrate equities

---

**2.** In 1992, Hernandez–Galaviz was convicted of his first felony, first-degree residential burglary. In 1995, he was convicted of his second felony, possession of a controlled substance (tar heroin), in violation of California Health and Safety Code § 11350(a). Hernandez–Galaviz has also suffered four misdemeanor convictions. In February 1995, Hernandez–Galaviz was convicted of possession of a controlled substance, petty theft of retail merchandise, and possession of a hypodermic needle. In June of the same year, Hernandez–Galaviz was convicted for being under the influence of a controlled substance. During this time, Hernandez–Galaviz repeatedly violated his parole and probation conditions.

present in *Ubaldo–Figueroa*, such as Ubaldo–Figueroa's exemplary employment history and marriage to a United States citizen. *Id.* at 1051. Thus, even if Hernandez–Galaviz has a less serious criminal history than Ubaldo–Figueroa, which he clearly does not, the scarce equities in his favor make it implausible that Hernandez–Galaviz would have received discretionary relief from deportation. *See Ayala–Chavez*, 944 F.2d at 642 (upholding BIA's determination that Ayala–Chavez's evidence of eighteen-year residence, steady history of employment, strong family ties, and support of his minor United States citizen child were "substantial, but not outstanding" equities that did not outweigh the seriousness of his possession conviction).

Accordingly, the district court's denial of Hernandez–Galaviz's motion to dismiss the indictment, and Hernandez–Galaviz's § 1325 conviction are

**AFFIRMED.**